# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| CARIDAD HILAIRE, individually and on behalf all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DYNAMIC RECOVERY SOLUTIONS, )<br>LLC, a South Carolina limited liability )<br>company, )<br>)<br>Defendant. ) | **CASE NO.**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1. Plaintiff Caridad Hilaire brings this action against Defendant Dynamic Recovery Solutions, LLC to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. At various times, and on numerous instances within the four (4) year period prior to the filing of this complaint, Defendant sent, or caused to be sent unsolicited calls to Plaintiff's cellular telephone, in violation of the TCPA.

## JURISDICTION AND VENUE

2. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227, *et seq*.

3. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a nationwide class, which will result in at least one class member belonging to a different state than Defendant. Plaintiffs seek up to $1,500.00 in damages for each call placed in violation of the TCPA, which, when aggregated among a proposed class numbering in the

thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

4. Venue is proper in the District because a substantial portion of the events complained of occurred here, i.e., Defendant placed unlawful "robocalls" to Plaintiff who resides in this District.

## PARTIES

5. Plaintiff Caridad Hilaire ("Plaintiff") is a natural person who, at all times relevant to this action, was and is a resident of Osceola County, Florida.

6. Defendant Dynamic Recovery Solutions, LLC ("Defendant") is a South Carolina limited liability company whose principal office is located at 135 Interstate Blvd., Suite 6, Greenville, SC 29615, and whose registered agent for service of process in the State of Florida is NRAI Services, Inc., 1200 South Pine Island Road, Plantation, FL 33324.

## FACTUAL ALLEGATIONS

7. Plaintiff is the regular user and carrier, with exclusive dominion and control of the cellular telephone numbers at issue in this complaint: (321) ***-5903 and (321) ***-4361—the numbers to which the violative calls alleged here were placed.

8. In or about March of 2018, Plaintiff received medical attention at a local hospital for which she received a bill thereafter. In connection with that medical visit, Plaintiff listed her cellular telephone number ending in 5903.

9. Subsequently, beginning in or about September of 2018, Plaintiff began receiving calls to her cellular telephone ending in 5903 from Defendant seeking to recover an alleged debt associated with the medical attention she received at the local hospital.

10. Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone numbers: (321) 666-7625, (321) 413-9616, (321) 465-7767, (321) 666-7523, and when those numbers are called, a pre-recorded message is played which indicates the phone number belongs to Defendant.

11. When Plaintiff answered a call from Defendant, she would hear a brief pause, and then an *automated message* telling her the call was from Defendant.

12. On information and belief, some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system."

13. Plaintiff will testify that she knew it was an automatic telephone dialing system because of the vast number of calls she received and the frequency in which they were placed, and because when she answered a call from Defendant, she would hear a brief pause, and then an automated message telling her the call was from Defendant.

14. In particular, Plaintiff estimates she received approximately 50-60 autodialed calls from Defendant in the last months alone. Plaintiff further estimates she received approximately 6-7 calls per day from Defendant.

15. Further, some or all of the calls at issue were placed by Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

16. In or about October of 2018, Plaintiff affirmatively called the Defendant from her other cell phone number ending in 4361 for the purposes of informing Defendant that she could not afford to pay the debt at issue, revoking any consent that Defendant had or believed it had to place autodialed or prerecorded calls to her cellular telephone, and demanding that Defendant cease placing calls to the cellular telephone number ending in 5903.

17. Despite the affirmative revocation of her consent, Defendant's campaign of telephonic abuse continued. Defendant continued to place autodialed calls to the 5903 number. What's more, Defendant began placing autodialed calls to Plaintiff's *other* cellular telephone number—the 4361 number—despite never receiving permission to do so.

18. Upon information and belief, Defendant obtained the 4361 number by surreptitiously capturing it through the use of automatic number identification ("ANI").

19. Each of Plaintiff's requests for the harassment to end was ignored.

20. Each call Defendant made after the aforementioned conversation in October of 2018 to Plaintiff's aforementioned cellular telephone numbers was done so without the "express consent" of the Plaintiff.

21. Each call Defendant made after the aforementioned conversation in October of 2018 to Plaintiff's aforementioned cellular telephone numbers was knowing and willful.

22. From about October of 2018 through the filing of this Complaint, Plaintiff estimates Defendant has placed approximately 50-60 actionable calls to Plaintiff's aforementioned cellular telephone numbers.

23. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling multiple times during one day, and on back to back days, with such frequency as can reasonably be expected to harass. From each and every call placed without express consent by Defendant to Plaintiff's cell phones, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

24. From each and every call placed without express consent by Defendant to Plaintiff's cell phones, Plaintiff suffered the injury of the occupation of her cellular telephone

line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

25. From each and every call placed without express consent by Defendant to Plaintiff's cell phones, Plaintiff suffered the injury of unnecessary expenditure of her time. Plaintiff had to waste time to deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

26. Each and every call placed without express consent by Defendant to Plaintiff's cell phones was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go through the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

27. Each and every call placed without express consent by Defendant to Plaintiff's cell phones resulted in the injury of unnecessary expenditure of Plaintiff's cell phones' battery power.

28. Each and every call placed without express consent by Defendant to Plaintiff's cell phones resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phones and her cellular phones' services.

29. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, anxiety, nervousness, emotional distress and aggravation.

30. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

31. Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant's call list.

32. Defendant has faced other lawsuits against them alleging similar violations as stated in this complaint.

33. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

34. Defendant has had numerous complaints against it from consumers across the country asking to not be called; however, Defendant continues to call these individuals

35. Defendant violated the TCPA with respect to the Plaintiff.

36. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

## OVERVIEW OF THE TCPA

37. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy . . ." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227). Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("Robocalls"), finding:

> Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

\*   \*   \*

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call ..., is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Id. § 2(10) and (12); *See also Mims v. Arrow Financial Services, Inc.*, 132 S.Ct. 740 (2012).

38. While imposing general restrictions on a wide set of telemarketing practices, the TCPA's strictest provisions apply to telemarketing by automatic telephone dialing system. See 47 U.S.C. § 227(b)(1).

39. The statutory definition of an automatic telephone dialing system (sometimes called "autodialer") is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator to dial the numbers[,]" and has the capacity to dial such numbers. Id. § 227(a)(1). The term also extends to predictive dialers and equipment that has the capacity to dial numbers without human intervention. See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014, 14093 (2003).

40. With the limited exception of calls made for emergency purposes, the TCPA bans all calls to cell phones placed through an autodialer, regardless of whether they solicit the sale of goods or services, unless the recipient of the call provides "prior express consent" to receive the calls. 47 U.S.C. § 227(b); 47 C.F.R. § 64.1200(a)(1).

41. "Prior express consent" exists where a consumer has (a) clearly stated that the telemarketer may call, and (b) clearly expressed an understanding that the telemarketer's subsequent call will be made for the purpose of encouraging the purchase of goods or services. See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 F.C.C.R. 12391, 12396, para. 11 (1995).

42. The FCC has issued rulings and clarified that in order to obtain an individual's consent, a clear, unambiguous, and conspicuous written disclosure must be provided to the individual. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278 Report and Order, FCC 12-21, ¶¶ 26, 32-33 (February 15, 2012).

## CLASS ACTION ALLEGATIONS

43. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

44. Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.

45. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

### The ANI / Skip Tracing Class

All persons within the United States to whom, within the four years immediately preceding the filing of this Complaint, Defendant or some person acting on Defendant's behalf, placed one or more phone calls to their cellular telephone number through the use of an automated telephone dialing system or an artificial or prerecorded voice, that Defendant obtained via ANI capture, skip tracing, and/or any method other than that person's express consent.

### The Revocation Class

All persons within the United States to whom, within the four years immediately preceding the filing of this Complaint, Defendant, or some person acting on Defendant's behalf, placed one or more phone calls through the use of an automatic telephone dialing system or an artificial or prerecorded voice after communicating to Defendant, as shown by Defendant's records, a request that Defendant stop calling their cellular telephone number.

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of, both Classes.

46. Excluded from the Classes is the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, Plaintiff's counsel and Plaintiff's counsel's staff.

47. The Classes are so numerous and geographically widespread that joinder is impracticable. Upon information and belief, as well as common experience of the size of automated dialing campaigns, there are easily more than one thousand persons in each Class.

48. The Classes identified herein are readily ascertainable by objective criteria such as Defendant's own records. *See LaVigne v. First Community Bancshares, Inc*., No. 1:15-cv-00934-WJ-LF (D.N.M. June 5, 2018) (certifying "wrong call" class).

49. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

50. Further, the Classes can be identified easily through records maintained by Defendant and/or its marketing agents.

51. There are well-defined, nearly identical, questions of law and fact affecting all parties.

52. The questions of law and fact, referred to above, involving the Class claims predominate over questions which may affect individual Class members.

53. Such common questions of law and fact include, but are not limited to, the following:

   a. Whether Defendant used an automatic telephone dialing system in making non-emergency calls to Class members' cell phones;

    b.      Whether Defendant placed calls to Class members' cell phones with a prerecorded message or artificial voice;

    c.      Whether Defendant can meet its burden of showing it obtained prior express consent to make such calls;

    d.      Whether Defendant's conduct was knowing and/or willful;

    e.      Whether Defendant is liable for statutory damages; and

    f.      Whether Defendant should be enjoined from engaging in such conduct in the future.

54. Plaintiff asserts claims that are typical of each Class member who also received such phone calls.

55. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes.

56. Plaintiff has no interests which are antagonistic to any member of the Class.

57. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

58. A class action is the superior method for the fair and efficient adjudication of this controversy.

59. Class wide relief is essential to compel Defendant to comply with the TCPA.

60. The interest of the Class members in individually pursuing claims against the Defendant is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter Defendant from engaging in the same behavior in the future.

61. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims.

62. Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole appropriate.

63. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### Count I

### Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

64. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

65. The foregoing acts and omissions of Defendant constitute violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227, *et seq.*, and its implementing regulations.

66. As a result of the Defendant's violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

67. Plaintiff and members of the Classes are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

68. Plaintiff and members of the Classes are also entitled to an award of attorneys' fees and costs, to the extent provided by law.

## Count II

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

69. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

70. The foregoing acts and omissions of the Defendant constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

71. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

72. Plaintiff and all members of the Classes are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendant in the future.

73. Plaintiff and all members of the Classes are also entitled to an award of attorneys' fees and costs, to the extent provided by law.

\*     \*     \*

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendant:

A. Injunctive relief prohibiting such violations of the TCPA by the Defendant in the future;

B. As a result of the Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

C. As a result of Defendant's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $500 in statutory damages for each and every call that violated the TCPA;

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class, to the extent provided by law;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate Classes and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes; and

G. Such other relief as the Court deems just and proper.

Dated: December 26, 2018

Respectfully submitted,

s/ Scott D. Owens
Scott D. Owens, Esq.
Scott D. Owens, P.A.
3800 S. Ocean Dr. Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

Gary M. Klinger (*pro hac vice forthcoming*)
Kozonis & Klinger, Ltd.
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 312.283.3814
Fax: 773.496.8617
gklinger@kozonislaw.com