# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | | |
|---|---|---|
| CARIDAD HILAIRE and FENICIA ROSARIO, individually and on behalf all others similarly situated, | ) ) ) ) | CASE NO. 6:18-cv-02211-RBD-DCI |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| DYNAMIC RECOVERY SOLUTIONS, LLC, a South Carolina limited liability company, | ) ) ) ) | |
| Defendant. | ) | |

## SECOND AMENDED CLASS ACTION COMPLAINT

1.      Plaintiffs Caridad Hilaire and Fenicia Rosario bring this action against Defendant Dynamic Recovery Solutions, LLC to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. At various times, and on numerous instances within the four (4) year period prior to the filing of this complaint, Defendant sent, or caused to be sent unsolicited calls to Plaintiffs' cellular telephones, in violation of the TCPA.

## JURISDICTION AND VENUE

2.      The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227, *et seq*.

3.      Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiffs allege violations of a federal statute.  Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs allege a nationwide class, which will result in at least one class member belonging to a different State than Defendant. Plaintiffs seek up to $1,500.00 in damages for each call placed in

violation of the TCPA, which, when aggregated among a proposed class numbering in the thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

4.     Venue is proper in the District because a substantial portion of the events complained of occurred here, i.e., Defendant placed unlawful "robocalls" to one of the Plaintiffs who resides in this District.

## PARTIES

5.     Plaintiff Caridad Hilaire ("Plaintiff Hilaire") is a natural person who, at all times relevant to this action, was and is a resident of Osceola County, Florida.

6.     Plaintiff Fenicia Rosario ("Plaintiff Rosario") is a natural person who, at all times relevant to this action, was and is a resident of Greenville, South Carolina.

7.     Defendant Dynamic Recovery Solutions, LLC ("Defendant") is a South Carolina limited liability company whose principal office is located at 135 Interstate Blvd., Suite 6, Greenville, SC 29615, and whose registered agent for service of process in the State of Florida is NRAI Services, Inc., 1200 South Pine Island Road, Plantation, FL 33324.

## FACTUAL ALLEGATIONS

### Plaintiff Hilaire

8.     Plaintiff Hilaire is the regular user and carrier, with exclusive dominion and control of the cellular telephone numbers at issue in this complaint: (321) ***-5903 and (321) ***-4361—the numbers to which the violative calls alleged here were placed.

9.     In or about March of 2018, Plaintiff Hilaire received medical attention at a local hospital for which she received a bill thereafter.  In connection with that medical visit, Plaintiff Hilaire listed her cellular telephone number ending in 5903.

10.     Subsequently, beginning in or about September of 2018, Plaintiff Hilaire began receiving calls to her cellular telephone ending in 5903 from Defendant seeking to recover an alleged debt associated with the medical attention she received at the local hospital.

11.     Plaintiff Hilaire's caller ID identified the calls were being initiated from, but not limited to, the following phone numbers: (321) 666-7625, (321) 413-9616, (321) 465-7767, (321) 666-7523, and when those numbers are called, a pre-recorded message is played which indicates the phone number belongs to Defendant.

12.     When Plaintiff Hilaire answered a call from Defendant, she would hear a brief pause, and then an *automated message* telling her the call was from Defendant.

13.     On information and belief, some or all of the calls Defendant made to Plaintiff Hilaire's cellular telephone number were made using an "automatic telephone dialing system."

14.     Plaintiff Hilaire will testify that she knew it was an automatic telephone dialing system because of the vast number of calls she received and the frequency in which they were placed, and because when she answered a call from Defendant, she would hear a brief pause, and then an automated message telling her the call was from Defendant.

15.     In particular, Plaintiff Hilaire estimates she received approximately 50-60 autodialed calls from Defendant in the last months alone.  Plaintiff Hilaire further estimates she received approximately 6-7 calls per day from Defendant.

16.     In or about October of 2018, Plaintiff Hilaire affirmatively called the Defendant from her other cell phone number ending in 4361 for the purposes of informing Defendant that she could not afford to pay the debt at issue, revoking any consent that Defendant had or believed it had to place autodialed or prerecorded calls to her cellular telephone, and demanding that Defendant cease placing calls to the cellular telephone number ending in 5903.

3

17.     Despite the affirmative revocation of her consent, Defendant's campaign of telephonic abuse continued.  Defendant continued to place autodialed calls to the 5903 number. What's more, Defendant began placing autodialed calls to Plaintiff Hilaire's *other* cellular telephone number—the 4361 number—despite never receiving permission to do so.

18.     Upon information and belief, Defendant obtained the 4361 number by surreptitiously capturing it through the use of automatic number identification ("ANI").

19.     Each of Plaintiff Hilaire's requests for the harassment to end was ignored.

20.     Each call Defendant made after the aforementioned conversation in October of 2018 to Plaintiff Hilaire's aforementioned cellular telephone numbers was done so without the "express consent" of Plaintiff Hilaire.

21.     Each call Defendant made after the aforementioned conversation in October of 2018 to Plaintiff Hilaire's aforementioned cellular telephone numbers was knowing and willful.

22.     From about October of 2018 through the filing of this Complaint, Plaintiff Hilaire estimates Defendant has placed approximately 50-60 actionable calls to Plaintiff Hilaire's aforementioned cellular telephone numbers.

23.     Defendant intentionally harassed and abused Plaintiff Hilaire on numerous occasions by calling multiple times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.  From each and every call placed without express consent by Defendant to Plaintiff Hilaire's cell phones, Plaintiff Hilaire suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

*Plaintiff Fenicia Rosario*

24.     Plaintiff Rosario is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

25.     Beginning in or around February of 2019, Plaintiff Rosario began receiving autodialed calls on her cellular telephone ((XXX) XXX-7812) from Defendant.

26.     When Plaintiff Rosario picked up the phone, a representative of Defendant informed Plaintiff Rosario that they were looking for "Javier", a person whom Plaintiff Rosario does not know.  Plaintiff Rosario told Defendant that it had the wrong number and to not call again, but Defendant continued to call.

27.     There was at least one number that appeared in Plaintiff Rosario's caller ID for these calls: (980) 217-5727.

28.     This number is associated with Defendant.

29.     For example, when this number is called, an automatic recording will answer, "Thank you for calling Dynamic Recovery Solutions."

30.     Plaintiff Rosario believes Defendant called her cellular telephone number on at least the following dates:  February 22, 2019, February 25, 2019 and February 26, 2019.

31.     Dynamic's calls were not intended for Plaintiff Rosario. Rather, Dynamic placed its calls in an effort to reach someone other than, and unknown to, Plaintiff named "Javier".

32.     The telephone number on which Dynamic contacted Plaintiff Rosario was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

33.     Plaintiff Rosario did not provide her "prior express consent" allowing Dynamic to place telephone calls to Plaintiff Rosario's cellular phone utilizing an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A).

34.     Indeed, Plaintiff Rosario is not a customer and/or debtor of Dynamic.

35.     In fact, Dynamic's representative asked for someone other than Plaintiff Rosario —a person whom Plaintiff Rosario did not know and with whom Plaintiff Rosario had no connection whatsoever.

36.     Plaintiff Rosario is not, nor was at the time of the calls in question, one of Defendant's customers.

37.     Plaintiff Rosario does not have, nor did have at the time of the calls in question, a business relationship with Defendant.

38.     The telephone calls made to Plaintiff Rosario's cellular telephone by Defendant were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

39.     The telephone calls to Plaintiff Rosario's cellular telephone made by Defendant, which utilized an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiff Rosario's prior express consent, violated 47 U.S.C. § 227(b)(1)(A).

*Plaintiffs Hilaire and Rosario Suffered Concrete and Actual Harm*

40.     From each and every call placed without express consent by Defendant to Plaintiffs' cell phones, Plaintiffs suffered the injury of the occupation of their cellular telephone lines and cellular phones by unwelcome calls, making the phones unavailable for legitimate callers or outgoing calls while the phones were ringing from Defendant's calls.

41.     From each and every call placed without express consent by Defendant to Plaintiffs' cell phones, Plaintiffs suffered the injury of unnecessary expenditure of their time.

Plaintiffs had to waste time to deal with missed call notifications and call logs that reflect the unwanted calls.  This also impaired the usefulness of these features of Plaintiffs' cellular phones, which are designed to inform the user of important missed communications.

42.     Each and every call placed without express consent by Defendant to Plaintiffs' cell phones was an injury in the form of a nuisance and annoyance to the Plaintiffs.  For calls that were answered, Plaintiffs had to go through the unnecessary trouble of answering them. Even for unanswered calls, Plaintiffs had to deal with missed call notifications and call logs that reflected the unwanted calls.  This also impaired the usefulness of these features of Plaintiffs' cellular phones, which are designed to inform the user of important missed communications.

43.     Each and every call placed without express consent by Defendant to Plaintiffs' cell phones resulted in the injury of unnecessary expenditure of Plaintiffs' cell phones' battery power.

44.     Each and every call placed without express consent by Defendant to Plaintiffs' cell phones resulted in the injury of a trespass to Plaintiffs' chattel, namely their cellular phones and their cellular phones' services.

45.     As a result of the calls described above, Plaintiffs suffered an invasion of privacy.  Plaintiffs were also affected in a personal and individualized way by stress, anxiety, nervousness, emotional distress and aggravation.

***Defendant's Unlawful Calling Practices are Uniform and Systemic***

46.     Defendant's corporate policy is structured so as to continue to call individuals like Plaintiffs, despite these individuals explaining to Defendant they do not wish to be called.

47.     Defendant's corporate policy provided no means for Plaintiffs to have Plaintiffs' numbers removed from Defendant's call list.

48.     Defendant has faced other lawsuits against them alleging similar violations as stated in this complaint.

49.     Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

50.     Defendant has had numerous complaints against it from consumers across the country asking to not be called; however, Defendant continues to call these individuals

51.     Defendant violated the TCPA with respect to the Plaintiffs.

52.     Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiffs.

### *Defendant's Used an ATDS to Place Calls to Plaintiffs and the Class*

54.     Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, telephone contact made by Dynamic to Plaintiffs on their cellular telephones occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).  To be sure, when Plaintiffs answered the calls from Dynamic, there was a long pause and then a clicking noise before one of Defendant's representatives came on the line.

55.     Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, Dynamic placed its calls to Plaintiffs' cellular telephone numbers by using (i) an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a person will be available to take the call, or

(ii) equipment that dials numbers and, when certain computer software is attached, also assists persons in predicting when a sales agent will be available to take calls, or (iii) hardware, that when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers, or (iv) hardware, software, or equipment that the FCC characterizes as a predictive dialer through the following, and any related, reports and orders, and declaratory rulings: *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 FCC Rcd 17459, 17474 (September 18, 2002); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14092-93 (July 3, 2003); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 566 (Jan. 4, 2008).

## OVERVIEW OF THE TCPA

56.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy . . ." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227). Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("Robocalls"), finding:

> Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> *         *         *
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call ..., is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Id. § 2(10) and (12); *See also Mims v. Arrow Financial Services, Inc*., 132 S.Ct. 740 (2012).

57.     While imposing general restrictions on a wide set of telemarketing practices, the TCPA's strictest provisions apply to telemarketing by automatic telephone dialing system. See 47 U.S.C. § 227(b)(1).

58.     The statutory definition of an automatic telephone dialing system (sometimes called "autodialer") is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator to dial the numbers[,]" and has the capacity to dial such numbers. Id. § 227(a)(1). The term also extends to predictive dialers and equipment that has the capacity to dial numbers without human intervention. See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014, 14093 (2003).

59.     With the limited exception of calls made for emergency purposes, the TCPA bans all calls to cell phones placed through an autodialer, regardless of whether they solicit the sale of goods or services, unless the recipient of the call provides "prior express consent" to receive the calls. 47 U.S.C. § 227(b); 47 C.F.R. § 64.1200(a)(1).

60.     "Prior express consent" exists where a consumer has (a) clearly sDynamicd that the telemarketer may call, and (b) clearly expressed an understanding that the telemarketer's subsequent call will be made for the purpose of encouraging the purchase of goods or services. See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 F.C.C.R. 12391, 12396, para. 11 (1995).

61.     The FCC has issued rulings and clarified that in order to obtain an individual's consent, a clear, unambiguous, and conspicuous written disclosure must be provided to the

individual. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278 Report and Order, FCC 12-21, ¶¶ 26, 32-33 (February 15, 2012).

## CLASS ACTION ALLEGATIONS

62.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

63.     Plaintiffs brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.

64.     Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

### The ANI / Skip Tracing Class

All persons within the United States to whom, within the four years immediately preceding the filing of this Complaint, Defendant or some person acting on Defendant's behalf, placed one or more phone calls to their cellular telephone number through the use of an automated telephone dialing system or an artificial or prerecorded voice, that Defendant obtained via ANI capture, skip tracing, and/or any method other than that person's express consent.

### The Revocation Class

All persons within the United States to whom, within the four years immediately preceding the filing of this Complaint, Defendant, or some person acting on Defendant's behalf, placed one or more phone calls through the use of an automatic telephone dialing system or an artificial or prerecorded voice after communicating to Defendant, as shown by Defendant's records, a request that Defendant stop calling their cellular telephone number.

### The Wrong Number Class

All persons and entities throughout the United States (1) to whom Defendant placed, or caused to be placed, a call directed to a number assigned to a cellular telephone service, but not assigned to the intended recipient of Defendant's calls, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) from four years prior to the date of this complaint through and including the date of class certification.

Collectively, all these persons will be referred to as "Class members." Plaintiffs represent and are members of the Classes.

65.     Excluded from the Classes is the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, Plaintiffs' counsel and Plaintiffs' counsel's staff.

66.     The Classes are so numerous and geographically widespread that joinder is impracticable. Upon information and belief, as well as common experience of the size of automated dialing campaigns, there are easily more than one thousand persons in each Class.

67.     The Classes identified herein are readily ascertainable by objective criteria such as Defendant's own records. *See LaVigne v. First Community Bancshares, Inc.*, No. 1:15-cv-00934-WJ-LF (D.N.M. June 5, 2018) (certifying "wrong call" class).

68.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

69.     Further, the Classes can be identified easily through records maintained by Defendant and/or its marketing agents.

70.     There are well-defined, nearly identical, questions of law and fact affecting all parties.

71.     The questions of law and fact, referred to above, involving the Class claims predominate over questions which may affect individual Class members.

72.     Such common questions of law and fact include, but are not limited to, the following:

a.      Whether Defendant used an automatic telephone dialing system in making non-emergency calls to Class members' cell phones;

b.      Whether Defendant can meet its burden of showing it obtained prior express consent to make such calls;

c.      Whether Defendant's conduct was knowing and/or willful;

d.      Whether Defendant is liable for statutory damages; and

e.      Whether Defendant should be enjoined from engaging in such conduct in the future.

73.     Plaintiffs assert claims that are typical of each Class member who also received such phone calls.

74.     Further, Plaintiffs will fairly and adequately represent and protect the interests of the Classes.

75.     Plaintiffs have no interests which are antagonistic to any member of the Classes.

76.     Plaintiffs have retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

77.     A class action is the superior method for the fair and efficient adjudication of this controversy.

78.     Class wide relief is essential to compel Defendant to comply with the TCPA.

79.     The interest of the Class members in individually pursuing claims against the Defendant is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter Defendant from engaging in the same behavior in the future.

80.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims.

81.     Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole appropriate.

82.     Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### Count I

### Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

83.     Plaintiffs incorporate by paragraphs 1-82 as if fully set forth herein. Allegations specific to Plaintiff Hilaire's claims are contained in paragraphs 5 and 8-23. Allegations specific to Plaintiff Rosario's claims are contained in paragraphs 6 and 24-39. The balance of paragraphs 1-82 are common to both Plaintiffs.

84.     The foregoing acts and omissions of Defendant constitute violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227, *et seq.*, and its implementing regulations.

85.     As a result of the Defendant's violations of 47 U.S.C. § 227, *et seq.*, Plaintiffs and Class members are entitled to an award of $500 in statutory damages for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

86.     Plaintiffs and members of the Classes are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

87.     Plaintiffs and members of the Classes are also entitled to an award of attorneys' fees and costs, to the extent provided by law.

14

**Count II**

**Knowing and/or Willful Violations**
**of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.***

88.     Plaintiffs incorporate by paragraphs 1-82 as if fully set forth herein. Allegations specific to Plaintiff Hilaire's claims are contained in paragraphs 5 and 8-23. Allegations specific to Plaintiff Rosario's claims are contained in paragraphs 6 and 24-39. The balance of paragraphs 1-82 are common to both Plaintiffs and the classes.

89.     The foregoing acts and omissions of the Defendant constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

90.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and each member of the Class is entitled to treble damages of up to $1,500 for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

91.     Plaintiffs and all members of the Classes are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendant in the future.

92.     Plaintiffs and all members of the Classes are also entitled to an award of attorneys' fees and costs, to the extent provided by law.

\*          \*          \*

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and all Class members the following relief against Defendant:

A.     Injunctive relief prohibiting such violations of the TCPA by the Defendant in the future;

B.      As a result of the Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member treble damages,

as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

C.     As a result of Defendant's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiffs seeks for themselves and each Class member $500 in statutory damages for each and every call that violated the TCPA;

D.     An award of attorneys' fees and costs to counsel for Plaintiffs and the Class, to the extent provided by law;

E.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate Classes and any Subclasses the Court deems appropriate, finding that Plaintiffs are proper representatives of the Classes, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Classes; and

G.     Such other relief as the Court deems just and proper.

*** Intentionally Left Blank***

Dated: March 26, 2019

Respectfully submitted,

s/ *Scott D. Owens*_____
Scott D. Owens, Esq.
Scott D. Owens, P.A.
3800 S. Ocean Dr. Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
*scott@scottdowens.com*

Gary M. Klinger*
Kozonis & Klinger, Ltd.
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 312.283.3814
Fax: 773.496.8617
*gklinger@kozonislaw.com*

*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties, if any, who are not authorized to receive electronically Notices of Electronic Filing.

By: s/ *Scott D. Owens*
Scott D. Owens, Esq.

17